FILED
2019 Jul-19 AM 08:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAQUINTE LOUIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2:16-cv-01019-LCB ) |
| A2Z POWERSPORTS, INC., et al., | ) ) |
| Defendant. | ) ) |

### MEMORANDUM OPINION

This matter is before the Court on the Motion for Default Judgment As To Defendant Victory Police Motorcycles, LLC ("VPM") filed by the Plaintiff, Officer Laquinte Louis (the "Plaintiff" or "Officer Louis"). (Doc. 87). Having considered the record in this matter and the testimony and exhibits presented by the plaintiff, the Court enters judgment in favor of the plaintiff and against the defendant for compensatory and punitive damages as outlined herein below.

### I. BACKGROUND AND PROCEDURAL HISTORY

This matter was initially removed from the Circuit Court of Jefferson County on June 23, 2016. (Doc. 1).[1] On October 10, 2016, Defendant VPM appeared through counsel and answered the initial complaint. (Doc. 22). On

---

[1] The case was removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1).

January 16, 2017, the Plaintiff filed his First Amended Complaint. (Doc. 27). On August 21, 2017, before VPM had filed any answer to the First Amended Complaint, counsel for VPM moved to withdraw. (Doc. 45). While that motion to withdraw was pending, the Plaintiff filed his Second Amended Complaint. (Doc. 49). The Second Amended Complaint is the operative complaint in this matter.[2]

The Court ordered counsel for VPM to certify that VPM had been made aware that a limited liability company cannot proceed *pro se* in federal court. (Doc. 52). VPM's counsel certified that VPM was informed of this fact, in addition to his earlier statement to the Court that VPM had been served with notice of counsel's intent to withdraw from representation. (*Id.*); *see also* (Doc. 45). VPM has never answered the First Amended Complaint or the Second Amended Complaint. Other than the actions taken by its counsel to withdraw, VPM has not taken any action at all to respond or otherwise defend this matter since it answered the initial complaint on October 10, 2016.

On December 21, 2018 the Court directed the Clerk of Court to make an entry of default as to VPM. (Doc. 83). The Clerk made an Entry of Default as to VPM on December 26, 2018. (Doc. 84). On February 22, 2019, the Plaintiff filed a Motion For Default Judgment as to VPM pursuant to Rule 55(b) of the *Federal*

---

[2] Two other defendants, Polaris Industries, Inc., and A2Z Powersports, Inc., were named in this lawsuit and have subsequently been dismissed by stipulation of *pro tanto* dismissal. Polaris Industries, Inc., was dismissed on September 20, 2017 (Doc. 51) and A2Z Powersports, Inc., was dismissed on October 19, 2018 (Doc. 73).

*Rules of Civil Procedure*. (Doc. 87).³ On March 12, 2019, the Court reiterated its finding that VPM had failed to respond or otherwise defend itself in this matter and entered a judgment by default against it. (Doc. 88). The Court further ordered that the Plaintiff appear and present evidence to assist the Court in determining the appropriate amount of damages. (*Id.*).

Plaintiff in its Second Amended Compliant demanded a trial by struck jury. (Doc. 49). Subsequently, plaintiff filed a motion to withdraw this demand pursuant to Rule 38(d), Federal Rules of Civil Procedure and moved for the Court to strike the demand against Victory Police Motorcycles, LLC. (Doc. 94). The Court granted this motion on May 30, 2019 and ordered the jury demand stricken from the Second Amended Complaint. (Doc. 95). Although, Rule 38(d) provides both parties must consent to a withdraw of jury demand, the Court finds that the Defendant by failing to defend and appear in this matter has effectively waived its right to object to plaintiff's withdraw of his jury demand.

On April 1, 2019, Plaintiff's counsel took testimony from the Plaintiff, introduced exhibits and argument and requested that the Court determine and

---

³ Plaintiff in its Second Amended Compliant demanded a jury trial on damages. (Doc. 49). Subseqently, plaintiff moved for default judgment against Victory Police Motorcycles, LLC and requested that damages be determined by this Court, thereby withdrawing his demand for a jury trial on damages. (Doc. 87). See also Rule 38  Pursuant to this request the Court a damage hearing on and reinterated his withdraw by requesting that the Court award damages in this case.

award compensatory and punitive damages in this matter. Based upon the evidence presented, the Court makes the following findings of fact and law.

## II. DISCUSSION

While courts generally require some notice to be given to defendants between the time of service of process and entry of a default judgment, *see, e.g., Capitol Records v. Carmichael*, 508 F. Supp. 2d 1079, 1083, n.1 (S.D. Ala. 2007), Rule 55 explicitly provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).[4] Furthermore, "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons, Inc.,* 448 F. Supp. 2d 193, 195 (D.D.C. 2006) (citation omitted). The Court is satisfied that Defendant VPM is on notice of the default proceedings against it. Before it stopped responding or participating in this matter, VPM had appeared and took the step of answering the initial complaint. However, VPM has failed to pled or defend the claims asserted against it in this lawsuit in any way since August 10,

---

[4] The failure to obtain counsel is by itself a failure to "otherwise defend" for purposes of Rule 55(a). *See, e.g., Developers Sur. & Indem. Co. v. Lewis Walker Roofing,* No. 3:15--cv--655-J-34-PDB, 2016 U.S. Dist. LEXIS 131533, *38 (M.D. Fla. Jul. 25, 2016) (sanctions for a corporation's failure to appear through counsel may include the entry of default because non-appearance constitutes failure to "otherwise defend"); *Maersk Line v. Phoenix Agro-Indus. Corp.*, No. CV-07-3169, 2009 U.S. Dist. LEXIS 131608, 2009 WL 1505281, at *2 (E.D.N.Y. May 27, 2009) ("It is well settled that '[a] corporate defendant's failure to obtain counsel is a failure to 'otherwise defend' under Rule 55 because a corporation cannot proceed *pro se*.'") (internal citations omitted).

2016. Finally, there is evidence in the record demonstrating that VPM is on notice of the continuing nature of this lawsuit following the withdrawal of VPM's counsel and subsequent failure to participate in these proceedings.[5] Accordingly, the Clerk of Court has made entry of default as to VPM and the Court has entered a judgment by default against that party as well.

### A. Factual Allegations In Plaintiff's Complaint Are Admitted By Default

The Court notes that VPM's default in this matter is "an admission of the facts cited in the Complaint." *Capitol Records*, 508 F. Supp. 2d at 1082-83. Upon the entry of a default judgment, the complaint's well pleaded allegations, but not those pertaining to the amount of damages, are taken as true the same as if they had been proven by evidence. *See, e.g., Boswell v. GumBayTay*, No. 2:07-CV-135-WKW, 2009 U.S. Dist. LEXIS 45954, *5 (M.D. Ala. Jun. 1, 2009) (citing *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir. 1990)). Once in default, a defendant cannot later seek to contradict those allegations. *See Nishimatsu Constr.*

---

[5] For example, the registered statutory agent for VPM is Michael Schultz. (Doc. 77-1). Mr. Schultz was designated as the 30(b)(6) representative of another entity defendant in this matter, A2Z Powersports, Inc., and was deposed in that capacity as recently as August 2018. (*Id.*). Further, the Court has deemed admitted certain Requests for Admission that were unanswered by VPM. Those Requests for Admission were introduced into evidence at the hearing on the Plaintiff's motion for default judgment held before this Court on April 1, 2019. Among the matters deemed admitted by VPM are that Michael Schultz was registered agent for VPM at the time he was deposed in August 2018, and thus, VPM was aware of the continuing nature of this lawsuit.

*Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).[6] Accordingly, the Court will take a moment to address the allegations in the Second Amended Complaint before addressing the evidence as to damages.

In his Second Amended Complaint, the Plaintiff alleges that "Defendant Victory was and is engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, servicing, repairing, marketing, warranting, retailing, wholesaling and advertising police motorcycles and, more specifically, a certain subject 2014 Victory Police Motorcycle, VIN 5VPDW30N9E3032008." (Doc. 49). The Plaintiff alleges the subject motorcycle's design defects included an unsafe rear suspension system which failed at high speeds, and a defective and unsafe design that required consumers to determine appropriate settings for the rear suspension system. (*Id.*). He further alleges the Defendants, including VPM, "knew or, in the exercise of reasonable care, should have known that said motorcycle and all of its component parts would be used without inspection for defects in its parts, mechanisms or design, for use in the State of Alabama and elsewhere by consumers." (*Id.*). VPM did this without issuing any warnings to the Plaintiff or the City of Birmingham about the motorcycle. (*Id.*).

---

[6] Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The Plaintiff and his employer, the City of Birmingham, relied on VPM's representations that the subject motorcycle was safe when the City of Birmingham decided to purchase it and others like it. (*Id.*). The subject motorcycle was not safe, however -- a fact which VPM knew and concealed from the Plaintiff and the City of Birmingham. (*Id.*). The Plaintiff was riding the subject motorcycle when it wrecked due to the defective design, and the Plaintiff was ejected from the motorcycle. (*Id.*). He was taken to the hospital and treated for his injuries. (*Id.*). The Plaintiff states the following claims for relief against VPM: (1) negligence and wantonness; (2) violation of the Alabama Extended Manufacturers' Liability Doctrine ("AEMLD"); (3) breach of implied warranty; (4) fraudulent concealment and suppression; and (5) negligent misrepresentation. (Doc. 49).

Based upon the complaint and admitted factual allegations coupled with the testimony and evidence presented at the hearing on damages, the Court hereby finds that the Defendant's negligent and wanton design and manufacture of the motorcycle in question along with the failure to warn proximately caused the plaintiff's injuries.

**B.    Damages**

Regarding the award of damages in a default judgment, Rule 55 provides as follows:

> (1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) *By the Court*. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Fed. R. Civ. P. 55(b).

Following entry of default, the Court held an evidentiary hearing to determine the appropriate amount of damages in this case. The complaint requests compensatory and punitive damages, *see* (Doc. 49), and the Court will address each in turn.

### 1. Compensatory Damages

At the April 1, 2019 hearing, the Plaintiff presented arguments and evidence in the form of exhibits and the testimony from Officer Louis. Officer Louis testified to his injuries, which are also documented in his medical records and photographs. Officer Louis's physical injuries included bleeding skin rashes, three

separate surgeries, scars, and permanent loss of use in his hand. Officer Louis presented photographs of the motorcycle wreck and of his own condition while he was hospitalized. He also testified to the continuing loss of use of his hand. For example, he has difficulty performing simple tasks like opening cans and jars at home, and has to ask his young daughter to help him.

In terms of accrued damages, the Plaintiff presented evidence of the City of Birmingham's lien for medical treatment and lost wages benefits Officer Louis received. The City's lien for medical treatment amounted to $109,319.77. The City of Birmingham also paid $30,183.89 in lost wages benefits to Officer Louis, who testified that this amount reflects two thirds of his actual lost wages. When the additional one third of lost wages in the amount of $15,137.27 is added to the two thirds the City of Birmingham paid and was entitled to recover, the Plaintiff's lost wages damages amount to $45,321.16. In all, the Plaintiff's exhibits and testimony established $154,640.93 in medical expenses and lost wages.

The Plaintiff also testified extensively to his mental anguish, emotional distress, and pain and suffering. This included records, admitted under seal, which support Officer Louis's testimony that he has had to seek formal mental health treatment as a result of the motorcycle wreck. Specifically, Officer Louis presented evidence that he has been diagnosed with generalized anxiety disorder and post-traumatic stress disorder.

Officer Louis gave several concrete examples of the ways in which the trauma of the wreck has played out in his personal and professional life. For example, Officer Louis testified that he finds it difficult to stand loud noises; he becomes unusually upset and finds it difficult to cope. He stated that when he has to talk about the wreck, he becomes emotional and it takes a significant amount of time for him to recover his composure. This fact was visible to the Court during the course of Officer Louis's testimony.

At the time of his wreck, Officer Louis was not just a motor pool officer but was also a motorcycle instructor who trained other riders. Officer Louis does not ride motorcycles for the City of Birmingham anymore and attributes this to the effects of his wreck. Even so, he has difficulty at work because he is still assigned, as he was before the wreck, to respond to traffic accidents. This frequently involves responding to fatal wrecks, which gives rise to emotional episodes in which Officer Louis has to take a break and finds it difficult to think or remain calm. Officer Louis becomes upset when there are loud noises and finds it impossible to travel on the portion of Interstate 459 where the wreck occurred; he and his wife have to go out of their way when traveling. Officer Louis also testified that he has recurring nightmares and has at times become unwittingly violent while sleeping in bed with his wife. This, he testified, has caused difficulty

in his marriage among the other stressors stemming from the wreck and its consequences.

It is clear that the effect of the wreck underlying this matter has had a deep and intense impact on his day-to-day both at home and at work. The Court is convinced that his life has been changed by the effects of the wreck and the mental and physical wounds he has sustained. Some wounds have healed, some may heal with time; some, clearly, will not.

In sum, the Plaintiff requested $154,640.93 in medical expenses and lost wages and an additional $500,000.00 in compensation for his past, present, and future pain and suffering as established through his testimony and other evidence. Based upon the findings described herein, the Court finds this amount appropriate and will enter judgment for compensatory damages in the total amount of $654,640.93.

## 2. Punitive Damages

Punitive damages are "intended to punish the defendant and to deter future wrongdoing." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001). Under Alabama law, a plaintiff is entitled to punitive damages "in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice

with regard to the plaintiff." Ala. Code § 6-11-20 (1975). In the *Goldsmith* case, the Eleventh Circuit indicated that courts are to evaluate the following "three guideposts" in considering punitive damages awards: (1) the degree of reprehensibility of the defendant's misconduct; (2) the ratio between compensatory damages (representing the actual or potential harm suffered by the plaintiff) and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Goldsmith*, 513 F.3d at 1282 (citing *Gore*, 517 U.S. at 575); *accord Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1218 (11th Cir. 2010). The Court will consider each factor of the *Goldsmith* guideposts in evaluating the appropriateness of punitive damages in this case under Alabama law and in relation to the compensatory damages awarded in this matter.

### a. *Reprehensibility of Conduct*

The "dominant" guidepost under *Goldsmith* is the reprehensibility of the defendant's conduct, which evaluates the following issues: (1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evidenced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct was financially vulnerable; (4)

whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Goldsmith*, 513 F.3d at 1283 (citing *W&O*, 213 F.3d at 614-15). Evidence tending to prove a company policy or practice of tortious conduct can support a sizeable punitive damages award." *Id.* (citing *W&O*, 213 F.3d at 615).

Each factor counsels an award of punitive damages in this matter. As to the first factor, it is clear Officer Louis suffered both physical and economic harm. The physical harm caused to Officer Louis is evident from the photographs and testimony he presented to the Court. The evidence shows that Officer Louis had to be rescued from the wreck site and was hospitalized. He had extensive and bloody road burns where flesh was stripped from his skin. He underwent multiple surgeries and has sustained an injury to his hand that has noticeably weakened it; he testified there is no likelihood he will regain full use of his hand.

As to the second factor, the allegations admitted by virtue of VPM's default demonstrate that VPM acted with indifference or reckless disregard (or worse) regarding the health or safety of others. *See, e.g.,* (Doc. 49 at p. 48) (VPM had exclusive access to material information about the "wobble" or "weave" risks of the subject motorcycle, and Defendants knew that neither Plaintiff Louis nor his employer could reasonably discover that information). The Court further notes the expert opinion of Dr. Mark Ezra, whose report is in evidence and who opined that

VPM did not conduct "any engineering testing of the police vehicle they designed and assembled over any meaningful speed range likely to be used in police work, nor did they employ or consult with competent engineers." *See* Report of Dr. Mark Ezra, at p.11. As Dr. Ezra put it, "[t]his same, untested, motorcycle was then specifically delivered to the Birmingham City police department as suitable and reasonably safe for the police officers of that police department to operate in normal and pursuit police operations," making Officer Louis an unwitting test rider of an untested vehicle. *Id*.

As to the third factor, regarding the financial vulnerability of the Plaintiff, the result is unclear. On the one hand, Officer Louis remains employed with the City of Birmingham since the wreck. On the other, it is clear that his medical expense damages alone amount to more than a year's salary and that his future medical issues will continue for the rest of his life. Therefore, the Court finds that, relative to the amount of economic harm he suffered in addition to the physical injuries, this factor weighs in favor of an award of punitive damages.

As to the fourth factor, which looks to whether the defendant's actions were repeated or singular, the Court notes that sold three motorcycles to the City of Birmingham -- Officer Louis's, and two others. The additional motorcycles were taken off the road following complaints from other officers about their safety and

operation. *See* Report of Dr. Mark Ezra, at p.11. Thus, this factor, too, weighs in favor of a punitive damages award.

As to the fifth factor, which looks to whether the defendant's conduct evidences malice, deceit, or trickery, the Court again notes the admitted allegations contained in the Plaintiff's Second Amended Complaint. *See* (Doc. 49 at p. 50) (alleging VPM's fraudulent concealment of the facts that (a) prior testing revealed that VPM motorcycles experienced a high speed "wobble" or "weave;" and (b) VPM had not conducted any studies establishing the safety of its motorcycle before selling it to the City of Birmingham). Accordingly, the fifth factor weighs in favor of awarding punitive damages.

In all, the Court finds that the "reprehensibility" factors weigh in favor of a finding that VPM's conduct supports a punitive damages award.

  *b.* *Ratio Between Compensatory And Punitive Damages*

The Supreme Court "has recognized that, 'in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.'" *Bogle v. McClure*, 332 F.3d 1347, 1361 (11th Cir. 2003) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)). Conversely, ratios within the single digits do not implicate due process concerns and are acceptable under the second *Goldsmith* "guidepost." Put another

way, where it is demonstrated that a defendant in default has shown a "serious disregard for the consequences of [its] action," punitive damages are appropriate in an amount at least equal to the amount of compensatory damages. *EEOC v. Nuñez, Inc.*, 2011 U.S. Dist. LEXIS 159963, *103-04 (N.D. Ga. Feb. 27, 2011) (considering the "instructive" cases of *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) and *Goldsmith*, 513 F.3d 1261 in evaluating the appropriateness of punitive damages, as compared to compensatory damages). Here, the punitive damages award the Plaintiff has requested is less than the compensatory damages, meaning that the ratio of compensatory damages to punitive damages would be less than 1:1 if the Plaintiff's request were granted in full. Thus, the "ratio" factor is not at issue in this matter.

    *c.*    *Difference Between Award and Comparable Cases*

The award requested in this matter is within amounts entered in comparable cases. As to negligence and wantonness, for example, the Court notes that in *Demus Smith v. Eduardo Gil, et al.*, No. 01-CV-2012-903998 (Jefferson Cty. Cir. Ct.), the state trial court entered default judgments -- including punitive damages in the amount of $500,000 as to one defendant and $1,000,000 as to another -- for claims of negligence and wantonness brought by a City of Birmingham police officer who was injured by a motor vehicle. *See id.,* Order of Final Judgments (Doc. 401). Such verdicts have been reached by juries as well. *See, e.g., Brian*

*Smith v. Alan Nelson, et al.*, No. 03-CV-2004-000425 (Montgomery Cty. Cir. Ct.) (motorcycle rider awarded $1,500,000 in compensatory and punitive damages following non-fatal vehicle wreck). Regarding the Plaintiff's AEMLD claim, this court has previously entered a punitive damages award in an amount nine times that of the compensatory damages award. *See McClain v. Metabolife Int'l*, Inc., 259 F. Supp. 2d 1225 (N.D. Ala. 2003). And certainly there are examples of fraud and misrepresentation cases which have resulted in punitive damages awards well in excess of what the Plaintiff seeks here. *See, e.g., Abrams v. Stroud*, No. 2:12-cv-177-MHT, 2013 U.S. Dist. LEXIS 173645, *20-21, 2013 WL 6511908 (M.D. Ala. Dec. 12, 2013), the Court entered a judgment by default that included punitive damages in the amount of $5,481,792.18, which in that matter amounted to three times the aggregate compensatory damages. The Court finds that an award of punitive damages in the amount of $500,000.00 would not be out of step with amounts entered in comparable cases. This is true whether the judgments considered are by default or by jury verdict, and whether they are rendered in state or federal court.

In light of the foregoing considerations as to the factors to be considered by the Court when evaluating punitive damages, the Court finds that punitive damages are appropriate in this case. The Court further finds that the "guideposts"

announced by the Eleventh Circuit in the *Goldsmith* case all weigh in favor of the amount requested by the plaintiff.

## **CONCLUSION**

For the reasons stated above, the Court finds that the compensatory and punitive damages requested by the plaintiff are justified by the pleadings and evidence in this case. The Court further finds that the amounts the plaintiff seeks are appropriate and in keeping with the law of this Circuit and the State of Alabama. Accordingly, the Court will enter a final judgment against the Defendant, VICTORY POLICE MOTORCYCLES, LLC, and in favor of the Plaintiff, LAQUINTE LOUIS, in the amount of $1,154,640.93, representing $654,650.93 in compensatory damages and $500,000.00 in punitive damages. A final judgment will be entered contemporaneously with this memorandum opinion.

**DONE** and **ORDERED** this July 18, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE